# EXHIBIT A

Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>28TH JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | CASE NO.<br>14 - 25574 -CK |
|---|---|---|

Court address 437 E. Division St.
Cadillac, Michigan 49601

Court telephone no.
(231) 779-9490

| Plaintiff's name(s), address(es), and telephone no(s).<br>COURTNEY LYNN BOX<br>REEVES BOX<br>12770 23 Mile Rd<br>Tustin, MI 49668 | v | Defendant's name(s), address(es), and telephone no(s).<br>EMPLOYEE BENEFIT SOLUTIONS, INC.<br>801 S MITCHELL ST<br>Cadillac, MI 49601<br><br>**RECEIVED** |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>Scott Mancinelli, P60148<br>156 W. Washington Ave<br>Zeeland, MI 49464-1120<br>(616) 772-5221 | | MARK SISSON.<br>4641 E. 28th Mile Rd<br>Cadillac, MI 49601     UCT - 6 2014 |

**SUMMONS    NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>9/30/2014 | This summons expires<br>12/30/2014 | Court clerk<br>Elaine L. Richardson |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT    Instruction:** *The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer     pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer     pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Tustin MI  (Osceola County) | Defendant(s) residence (include city, township, or village)<br>Cadillac, MI  (Wexford County) |
|---|---|
| Place where action arose or business conducted<br>Cadillac, MI | |

September 26, 2014
Date

Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01  (3/08)  **SUMMONS AND COMPLAINT**    MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No. 14-25574 - CK |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:    (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:    (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,
together with _____
        List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Mileage fee | Total fee |
|---|---|---|---|
| $ | | $ | $ |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                            Date

My commission expires: _____  Signature: _____
                              Date                          Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                        Attachments

_____ on _____
                                          Day, date, time

_____ on behalf of _____ .
Signature

RECEIVED
OCT -6 2014

STATE OF MICHIGAN

IN THE 28TH CIRCUIT COURT FOR THE COUNTY OF WEXFORD
437 E. Division St.
Cadillac, MI 49601

---

COURTNEY LYNN BOX an individual,
And REEVES BOX, an individual,

Case No. 14 - 25574 - CK

Hon. William M. Fagerman

Plaintiffs,

VS.

**COMPLAINT and
DEMAND FOR JURY TRIAL**

EMPLOYEE BENEFIT SOLUTIONS,
INC., a Michigan corporation, and MARK
SISSON.

Defendants.

---

Scott Mancinelli (P60148)
HOESCH & VANDER PLOEG, P.L.C.
Attorneys for Plaintiffs
156 West Washington Avenue
Zeeland, MI 49464
(616) 772-5221 (ph)
(616) 772-2367 (fax)
ScottM@hvplaw.com

~~~~~
9/30  14
Elaine S. Richardson

---

NOW COME Plaintiffs, Courtney Lynn Box and Reeves Box, and hereby states for their

Complaint as follows:

## JURISDICTION AND VENUE ALLEGATIONS

1.    Plaintiffs Courtney Lynn Box and her husband Reeves Box are citizens of the

United States and the State of Michigan, and reside in Osceola County.

2.      Defendant Employee Benefits Solutions, Inc. (hereinafter referred to as "EBSI") is a for profit Michigan corporation with its corporate headquarters in Cadillac, Wexford County, Michigan.

3.      Defendant Mark Sisson is an individual who resides, does business in, and owns real property in Wexford County.

4.      Defendant Mark Sisson is a shareholder and President of defendant EBSI.

5.      The events giving rise to this complaint occurred in Wexford Counties.

6.      The venue and jurisdiction are proper in this court.

7.      The amount in controversy is in excess of $25,000.

## GENERAL ALLEGATIONS

8.      EBSI is a non-captive insurance agency that sells, among other things, health and life insurance to individuals and business for various insurance carriers.

9.      Some of the insurance carriers for whom EBSI sells insurance have offices and headquarters outside the State of Michigan.

10.      EBSI regularly sends insurance premium payments to insurance carriers outside of the State of Michigan.

11.      EBSI regularly receives insurance commission payments from insurance carriers outside of the State of Michigan.

12.      Plaintiff Courtney Box was an employee and later a commissioned sales agent of EBSI from spring of 2003 through November 11, 2013.

13.      Plaintiff Courtney Box helped start EBSI, and worked many overtime hours building the insurance agency up. Her initial job duties when she first started at EBS were

2

processing paper work inside the office, putting together presentations, quoting claims, and any of the duties that a customer representative would handle among other things.

14.    Plaintiff Courtney Box job duties progressed after about five years to further duties such as calculating the commissions for agents, calculating commission splits, taking care of current accounts and customer service.

15.    Eventually Plaintiff Courtney Box was in charge of accounting records, entering commission data and issuing checks to agents for their commissions.

16.    Courtney Box was also involved in the banking for EBS including making deposits and withdrawals and also had check signing authority.

17.    From time to time Courtney Box hired, fired employees and trained new employees.

18.    From the beginning of her employment with EBSI, Courtney Box was paid hourly for the work she completed.

19.    Although EBSI's hours in which it was open to the public were Monday to Friday, 8 a.m. to 5 p.m. Courtney Box worked many overtime hours throughout the entire course of employment.  Her average hours worked from early in her employment through 2013 was 65 to 80 hours each week.

20.    Although Courtney Box was paid on an hourly basis, she was never paid any overtime.

21.    In August of 2011 Courtney Box took on an additional role of commissioned insurance agent.

3

22.    Prior to becoming a commissioned insurance agent Courtney Box was paid an hourly wage for her work at EBSI, her last hourly wage in 2011 with EBSI was approximately $14.38/Hour.

23.    After Courtney Box became a licensed and commissioned insurance agent she was paid only on a commission basis beginning around August 20th, 2011, and all hourly wage payments stopped.

24.    However, Defendant EBSI required plaintiff Courtney Box to continue performing her normal in office administrative and management duties for which she was paid nothing; in addition to her new duties as a commissioned insurance agent.

25.    Courtney Box rarely took sick or vacation time.

26.    Beginning in August 2011, Defendant EBSI intentionally and willfully misclassified Courtney Box as an outside sales agent in order to avoid paying her any hourly wages or benefits or overtime.

27.    Defendant EBSI did not compensate plaintiff Courtney Box for the extra time she was required to work in excess of forty (40) hours per week, nor did it provide any hourly wage of any kind after about August 20, 2011, despite that the majority of Courtney Box time was spent at the EBSI office and not in outside sales

28.    After August 20, 2011, Courtney Box worked approximately 60 to 80 hours per week, first at EBSI offices from 7:15 a.m. to 5:30 p.m. without a lunch break (or any break), plus additional hours during the night both at the office and at home which were uncompensated and which had nothing to do with outside sales, as those hours were spent entirely at the EBSI offices or on administrative and management duties completed at home. Only 20-25 hours a week were

4

related to outside sales, the remaining 40 to 45 hours per week were related to administrative and management duties.

29.     Given that defendant EBSI misclassified plaintiff Courtney Box as outside sales, defendant EBSI also failed to properly record all of the hours that Courtney Box worked each week.

30.     Defendant EBSI did not compensate plaintiff Courtney Box for overtime hours worked from the inception of her employment through August 20, 2011.

31.     Defendant EBSI did not compensate plaintiff Courtney Box for her non-sales administrative work or for work hours over forty (40) that she worked in a given workweek and did not pay a rate of one and one-half times her regular rate for overtime hours.

32.     Throughout the course of her employment Mark Sisson the owner and President of EBSI treated female employees differently from male employees. He would often scream and shout at female employees, throw things, use vulgar – insulting – profane language toward female employees, including Courtney Box, which he did not do with male employees of EBSI.

33.     In late August or early September of 2013, Courtney Box received a call from Mark Sisson requesting that someone drop off documents related to The Affordable Care Act to him during a meeting he was having at the Kountry Kitchen Restaurant located in Cadillac, Michigan where he was meeting with Jeff Geeseman, the owner of Cadillac Insurance Center (CIC), a competitor of EBS.

34.     Courtney Box was surprised that Mark Sisson was meeting with Jeff Geeseman because CIC previously had litigation with James Blackburn which was one of the primary reasons that James Blackburn came to EBS. Mark Sisson was aware of this.

5

35.    A few weeks later Mark Sisson and Courtney Box had gone to visit an insurance client of EBS. During the ride back Mark Sisson stated that he was talking with Jeff Geeseman of CIC about selling EBS to Mr. Geeseman and CIC. He expressed to her that he was very excited because he thought it would be very good for him financially. Courtney Box was extremely disappointed because he had always told her that he would be selling the business to her and this is the reason why Courtney Box had worked for substantially lower wages and no overtime payments for many years.

36.    At that time Courtney Box inquired how he could expect her to work for Mr. Geeseman who Mr. Sisson and Courtney Box discussed is not someone she would be comfortable working with due to his prior history of sexually harassing female employees.

37.    Courtney Box was constructively terminated by EBS on November 11, 2013. The night before, Mark Sisson and Courtney Box were discussing on the phone some changes and some administrative ideas. Mr. Sisson got very upset and started screaming at her as he had often done in the past.

38.    Courtney Box put the phone down so she wouldn't hear him scream but she still could hear him six feet away because he was screaming so loud and the phone was not on speaker. He ended up hanging up the phone. The next day, on November 11, 2013, Courtney Box went to work and was there early as usual, and she noticed after a bit that she had a voicemail message. Courtney Box retrieved the voicemail and was surprised it was Mr. Sisson again screaming that he would never sell the agency to her. He continued screaming how worthless Courtney Box is and how horrible of a person she was. Courtney Box was so upset that she broke down crying. She called Mr. Sisson and told him she couldn't take it anymore; she was crying the entire time. Mr. Sisson just said "pack up your shit and get out" and he hung up.

6

39.    Not long after leaving EBS, Courtney Box became concerned that Mr. Sisson would retaliate against her personally, possibly violently. Box and her husband Reeves decided to send their children to her mother's house on the east side of the state for their own safety in case Mark Sisson tried anything. This was before Courtney Box received the death threats.

40.    Courtney's sister Denise Ochampaugh used to work at EBS from approximately 2005 through 2008. She left to be a stay at home mom.

41.    Denise Ochampaugh lives about 100 yards away from where Mark Sisson lives on an adjacent property.

42.    Denise Ochampaugh home was built on real property previously owned by Mark and Melissa Sisson.

43.    Mark Sisson used to visit with Denise and his grandchildren at her house. In late November or early December of 2013, Mark Sisson had three different conversations with Denise in which he threatened Courtney Box life.

44.    In the first threat he said "If Courtney lived any closer Courtney she would go over and strangle her with my bare hands".

45.    The second death threat occurred on December 3, 2013, in which he said that he was going to come over to Courtney Box house with a shot gun. During this time he mentioned to Denise that he is mentally unstable and Denise advised that he go and get help for that. That is the same day that Courtney Box filed a police report with the police department.

46.    The final threat occurred in December before Christmas in which he said if he ever saw Courtney Box in public he would kill or shoot her, tie her to the back of his vehicle, and drag her dead body down Main Street.

7

47.    These threats caused her to be Courtney Box to be so afraid and so concerned for her safety and for her family that she and her husband Box sought personal protection orders for the entire family from this Court which were granted.

48.    Courtney Box sister Denise informed her of the death threats. Denise would call Box after each death threat within a few hours to relay what had been said by Mr. Sisson to her so that Courtney Box would be aware because Denise was afraid for Box safety.

49.    Sometime in the first week of December Mark Sisson called Box cell phone and left Box a message threatening to destroy her. This was stated repeatedly in the message.

50.    Mark Sisson owns numerous guns. Courtney Box has personally known Mark Sisson to shoot family pets. In one instance, in the early 2000's when Courtney Box was a teenager, Mr. Sisson became annoyed with her younger sister Denise's dog that he took a gun out of the house and shot it in the head in the front yard. He then insisted for Box to help him drag it away and bury it. He often bragged about how the dog was so dumb and that it just stood there wagging its tail at him while he pointed the gun at it and shot it.

51.    The day that the ex parte PPO was issued, Courtney Box was terrified of Mark Sisson coming to her house to retaliate. She took all four children to Grand Rapids, and stayed at her sister-in-law's house for the entire weekend so we would be safe from retaliation from Mark Sisson.

52.    The Personal Protection Order petitions had a full evidentiary hearing on Friday April 4, 2014 before Judge Ronald C. Nichols who took testimony from Courtney Box, Rebecca Hyland, Denise Ochampaugh, and Mark Sisson.

53.    At the hearing, Mark Sisson denied making any threats including leaving the "I will destroy you" message on Box cell phone, after the message was played for the Court and everyone

8

could plainly hear Sisson saying multiple times *"Will destroy you"*, Judge Ronald C. Nichols' ruled that Sisson had lied to him on the witness stand, found him in criminal contempt of court and ordered him immediately jailed for the weekend. (PPO hearing partial transcript. 84:10-15).

54.    The Osceola Circuit Court made a finding of fact that Sisson made death threats and violent statements against Box, that these statements were sufficient to enter six personal protection orders against Mark Sisson.

55.    The Osceola Circuit Court also found that Sisson had lied on the witness stand when denying he made such statements. A judgment of criminal contempt was issued against Mark Sisson. All six Personal Protection Orders were also issued as final orders as well.

<div align="center">

**COUNT I**
**Violation of Fair Labor Standards Act**
**(Failure to Pay Wages and Overtime Compensation)**
**Courtney Lynn Box v. EBSI**

</div>

56.    Plaintiff incorporates by reference the pre-ceding paragraphs of this complaint as if fully restated herein.

57.    This count is brought under the Fair Labor Standards Act ("FLSA") of 1938, as amended, 29 U.S.C. § 201, *et seq.*, for defendant's failure to pay plaintiff her wages and overtime compensation.

58.    Defendant EBSI was an "enterprise engaged in commerce or in the production of goods for commerce" as it had "employees engaged in commerce or in the production of goods for commerce" and "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000...." 29 U.S.C. § 203(s)(1)(A).  As such, defendant was a covered enterprise under the terms of the FLSA.

59.    Under the FLSA, 29 U.S.C. § 207(a)(2), unless an employee is exempt, "No employer shall employ any of her employees who in any workweek is engaged in commerce or in

<div align="center">9</div>

the production of goods for commerce...for a workweek longer than forty hours...unless such employee receives compensation for her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which she is employed."

60.     Courtney Lynn Box is an individual who was employed by defendant EBSI and was a covered "employee" pursuant to 29 U.S.C. § 203(e).

61.     Plaintiff typically worked a workweek longer than forty (40) hours, but she was not compensated for any excess hours or overtime hours in excess of forty (40) hours per weekly paycheck.

62.     Plaintiff was not an exempt employee as defined under the FLSA, 29 U.S.C. § 213. See *Alverez v. Key Transportation Corp.*, 541 F Supp.2d 1308 (S.D. Fla. 208).

63.     By failing to pay plaintiff for hours worked at her normal rate of pay, and by failing to pay plaintiff for her overtime hours at a rate not less than one and one-half times her prior regular rate of pay as required under the FLSA, defendants have violated 29 U.S.C. § 206 and 207, and plaintiff is entitled to the damages and compensation set forth in 29 U.S.C. § 216(b).

64.     Defendant's violations of the FLSA were not in good faith within the meaning of 29 U.S.C. § 260, therefore, plaintiff is entitled to liquidated damages under 29 U.S.C. § 216(b).

65.     Because defendant willfully violated the FLSA by refusing to pay plaintiff her wages and overtime compensation, plaintiff's action may be commenced within three years after the cause of action accrued, and plaintiff may seek damages going back three years from the date her complaint is filed.  29 U.S.C. § 255.

66.     Courtney Box is owed wages for 2011 for nineteen weeks at 30 hours per week at $14.28 per hour totaling $8,139.60.

10

67.    Courtney Box is owed wages for 2012 for fifty two weeks at 30 hours per week at $14.28 per hour totaling $22,276.80.

68.    Courtney Box is owed wages for 2013 for forty-five weeks at 30 hours per week at $14.28 per hour totaling $19,278.00.

69.    Courtney Box is owed a total of $49,694.40 for unpaid hourly wages from August 20, 2011 through November 11, 2013.

Wherefore, Plaintiff Courtney Box requests this Court enter judgment in her favor for unpaid wages as determined according to proof but in no event less than $49,694.40, pre-filing interest running from the date wages should have been paid on each EBSI pay period through the date of the filing of this complaint at 5% pursuant to MCL §438.31, liquidated damages equal to the cumulative amount that EBSI did not pay pursuant to 29 USC 216(b), attorney fees pursuant to 29 USC 216(b) and *Featsent v. City of Youngstown*, 70 F3d 900 (6th Cir 1995), post-judgment interest pursuant to MCL 600.6013(8) and any other relief the Court deems just.

<div align="center">

**COUNT II**
**Violation of MCL 408.411 Et. Seq.**
**Failure to Pay Wages**
**Courtney Lynn Box v. EBSI**

</div>

70.    Plaintiff incorporates by reference the pre-ceding paragraphs of this complaint as if fully restated herein.

71.    Defendant has violated the Work Force Opportunity Act MCL 408.411 by failing to pay Courtney Box anything for her management and administrative labor from approximately August 20, 2011 through November 11, 2013, as set forth above in Count I.

Wherefore, Plaintiff Courtney Box requests this Court enter judgment in her favor for unpaid wages as determined according to proof but in no event less than $49,694.40, pre-filing

interest running from the date wages should have been paid on each EBSI pay period through the

date of the filing of this complaint at 5% pursuant to MCL §438.31, liquidated damages equal to

the cumulative amount that EBSI did not pay pursuant to pursuant to statute, attorney fees pursuant

to pursuant to statute and *Featsent v. City of Youngstown*, 70 F3d 900 (6th Cir 1995), post-judgment

interest pursuant to MCL 600.6013(8) and any other relief the Court deems just.

<u>COUNT III</u>
Breach of Contract to Pay Wages
Courtney Lynn Box v. EBSI

72.     Plaintiff incorporates by reference the pre-ceding paragraphs of this complaint as if

fully restated herein.

73.     Plaintiff agreed to administrative and management services to Defendant in

exchange for payment for her services at the hourly rate of pay of about $14.38.

74.     From the inception of her employment through November 2011 EBS never paid

Courtney Box any overtime.

75.     Courtney Box actually worked overtime every week she worked at EBS except for

the few weeks that she was sick, on maternity leave, or on vacation.

76.     Courtney Box averaged 30 or more overtime hours each week over the course of

her entire employment, and specifically during the time period of 2008 through August 20, 2011.

77.     Courtney Box earned but was not paid for overtime hours of approximately 4560

from September 15, 2008 through August 20, 2011. (15 weeks 2008, 52 weeks 2009, 52 weeks

2010, 33 weeks 2011 = 152 weeks X 30 average overtime hours)

78.     During the time period from September 15, 2008 through August 20, 2011,

Courtney Box hourly rate of pay ranged from a low of $12.00 to a high of $14.38, an average of

$13.19.

79.    Courtney Box is owed approximately $90,219.60 (13.19 X 1.5 X 4560 hours) for her unpaid overtime hours from September 15, 2008 through August 20, 2011

80.    From approximately August 20, 2011 through her final day on November 11, 2013, Defendant failed to pay anything to Plaintiff for her administrative and management services and labor as set forth in Count I.

81.    Plaintiff completed and fully performed all services required of her under the contract.

82.    Defendant has breached the agreement by failing to any overtime pay as set forth above, and by failing to pay anything to Plaintiff for her non-sales work and labor from approximately August 20, 2011 through November 11, 2013.

Wherefore, Plaintiff Courtney Box requests this Court enter judgment in her favor for unpaid wages as determined according to proof but in no event less than $90,219.60 for the unpaid overtime and $49,694.40 for the unpaid hourly wages after August 20, 2011 – a combined total of $139,913.60, pre-filing interest running from the date wages should have been paid on each EBSI pay period through the date of the filing of this complaint at 5% pursuant to MCL §438.31, post-judgment interest pursuant to MCL 600.6013(8), and any other relief the Court deems just.

<div align="center">

### COUNT IV
**Unjust Enrichment**
**Courtney Lynn Box v. EBSI**
**Pled in the Alternative to Count III**

</div>

83.    Plaintiff incorporates by reference the pre-ceding paragraphs of this complaint as if fully restated herein.

84.    Pleading in the alternative, Plaintiff states that in the event that there is no contract between the parties then Defendant should be held liable in quasi contract for the services and

<div align="center">13</div>

labor which they received from the Plaintiff, which were provided to them based upon Defendants' promise to make Plaintiff an owner or shareholder in EBSI.

85.    Defendant has failed and refused to pay the amount owing.

86.    Failure to make the Defendant pay for the services and materials which they received from the Plaintiff will result in an unjust enrichment of the Defendant.

Wherefore, Plaintiff Courtney Box requests this Court enter judgment in her favor for unpaid wages as determined according to proof but in no event less than $90,219.60 for the unpaid overtime and $49,694.40 for the unpaid hourly wages after August 20, 2011 – a combined total of $139,913.60, pre-filing interest running from the date wages should have been paid on each EBSI pay period through the date of the filing of this complaint at 5% pursuant to MCL §438.31, post-judgment interest pursuant to MCL 600.6013(8), and any other relief the Court deems just.

<u>COUNT V</u>
**Intentional Infliction of Emotional Distress**
**Courtney Lynn Box v. EBSI & Mark Sisson**

87.    Plaintiff incorporates by reference the pre-ceding paragraphs of this complaint as if fully restated herein.

88.    As a direct result of the defendant EBSI and Mark Sisson's outrageous actions toward her, plaintiff has suffered extreme emotional distress and anxiety from the intimidation, the death threats, and the threatening telephone calls from Mark Sisson. The mental and emotional distress has led to significant physical symptoms and manifestations.

89.    Courtney Box has suffered loss of appetite. She does not want to eat because she feels sick after eating. When she does eat heaviness fills her chest and she starts having acid reflux issues.  It is hard to breathe after eating.  She has lost more than sixty pounds since November 2013. She went from a size 12/14 to a size 6. She still fluctuates between 134 and 138 pounds.

She now sees a doctor in regards to this who is monitoring her every 3 months. She has also been referred for psychiatric care.

90.    Earlier in the spring of 2014 Box went to the doctor's office because she thought she was having a heart attack. She went to the doctor's office later that day and they hooked her up to an EKG. They said that her heart was fine and asked her if she was under any sort of stress. She said yes and they said what she had was a full blown panic/anxiety attack, which can feel like a heart attack.

91.    Her blood pressure has increased to 134/89 over this time period, her normal blood pressure reading is 98/55. The panic/anxiety attacks increased from November 2013 through the spring of 2014. She is afraid all the time of little things that never used to bother her. This fear has been increasing.

92.    Concentrating has been horrible. She frequently loses her train of thought. On a daily basis she will be speaking to people and her mind will just go blank. She will then need to ask the person what we were talking about.

93.    She has a great deal of anxiety which she attribute to the death threats and her father's actions against her. She doesn't feel safe at home and she wants to sleep all the time. She paces the house staring out the windows looking at the driveway. Her husband has had to walk her away from the windows and take her into another room to calm her down.

94.    She has nightmares about Sisson coming to her house and killing her family. She will wake up drenched in sweat. In December 2013 through beginning of April 2014, she would have Nightmares/Night sweats anywhere between 4 to 7 nights per week.

95.    She is taking Prilosec for acid reflux which she did not previously. She also has issues with irritable bowel syndrome which she did not previously have.

15

96.    As a direct result of defendant's outrageous, intentional actions toward plaintiff, she suffered emotional distress and is entitled to an award of damages.

97.    The Defendant's conduct, as described above, was intentional.

98.    The Defendant's conduct, as described above, was extreme and outrageous. Further, such conduct was of such character as not to be tolerated by a civilized society.

99.    The Defendant's conduct, as described above, was for an ulterior motive or purpose.

100.    The Defendant's conduct, as described above, has in the past and continues to result in severe and emotional distress to Courtney Box.

101.    As a direct and proximate cause of the Defendant's conduct, Courtney Box has sustained damages as described above.

WHEREFORE, plaintiff requests that this Court: Award plaintiff compensatory damages against defendant EBSI caused by its outrageous, intentional actions through its owner and President Mark Sisson, in an amount which exceeds $25,000.00; award exemplary damages based on defendant's actions toward her through Mark Sisson; Award plaintiff her costs and expenses incurred in this action, interest on the judgment and any other relief the Court deems just.

### COUNT VI
**Negligent Infliction of Emotional Distress**
**Courtney Lynn Box v. EBSI & Mark Sisson**

102.    The Plaintiff incorporates by reference the pre-ceding paragraphs of this complaint as if fully restated herein.

103.    The Defendants owed Plaintiff Courtney Lynn Box the duty to act in a reasonable, professional manner and to refrain from being verbally and physically abusive as reasonable employer would.

104.    The Defendant breached her duty to Plaintiff Courtney Lynn Box in one or more of the ways as described in this Complaint.

105.    The Defendant's breach of their duties to Plaintiff Courtney Lynn Box was a proximate cause of emotional distress and other damages sustained by Plaintiff Courtney Lynn Box as described above.

WHEREFORE, plaintiff requests that this Court: award plaintiff compensatory damages against defendant EBSI caused by its outrageous, intentional actions through its owner and President Mark Sisson, in an amount which exceeds $25,000.00; award plaintiff her costs and expenses incurred in this action, including reasonable attorney fees; interest on the judgment and any other relief the Court deems just.

<div align="center">

**COUNT VII**
**Quantum Meruit**
**Reeves Box v. Mark Sisson**

</div>

106.    Plaintiff incorporates by reference the pre-ceding paragraphs of this complaint as if fully restated herein.

107.    From June to August 2011 Defendant hired Reeves Box as a laborer to assist in framing in a house on his residential property in exchange for reasonable payment based on the value of his services.

108.    The house that was framed was eventually sold or transferred by Defendant to Denise and Nick Ochampaugh

109.    In October of 2012 pursuant to the defendants offer Reeves Box proceeded to build a pole building/barn.

110.    Reeves Box worked on the framing of the house for about eight weeks working approximately forty-five hours each week, an approximate total of three hundred sixty hours.

<div align="center">17</div>

111.    Reeves Box worked on the pole barn an approximate total of sixty hours

112.    Reeves Box has fully performed and completed all work requested of him by defendants, in a workman like manner, and the structure is complete.

113.    Defendant has failed to provide any consideration to Reeves Box for his work on the Pole Building or the framing of the house.

114.    Reeves Box normally received $40.00 per hour as his going rate as construction laborer for framing and building services.

115.    The reasonable value of Reeves Box services to Defendant was no less than $16,800 based on $40.00 per hour multiplied by four hundred twenty hours.

Wherefore, Plaintiff Reeves Box requests this Court enter judgment in his favor according to proof based on his typical hourly rate for construction labor that Reeves Box received in the past, post-judgment interest pursuant to MCL 600.6013(8), and any other relief the Court deems just.

## COUNT VIII
### Unjust Enrichment
### Reeves Box v. Mark Sisson
### Pled in the Alternative to Count VII

116.    Plaintiff incorporates by reference the pre-ceding paragraphs of this complaint as if fully restated herein.

117.    The elements of an unjust enrichment claim are (1) the receipt of a benefit by the Defendant from the Plaintiff, and (2) which benefit it is inequitable that the Defendant retain. *B & M Die Co v Ford Motor Co*, 167 Mich App 176, 181; 421 NW2d 620 (1988).

118.    Plaintiff's work has conferred a benefit on Defendant.

119.    As a result of Plaintiff's work and labor, Defendant has received a fully functional pole barn and received the major portion of a completed residential home.

120.    Defendant should be held liable in quasi contract for the services which he received from the Plaintiff.

121.    Despite Plaintiff's requests for payment, Defendant has failed and refused to pay the amount owing.

122.    Failure to make the Defendant pay for the services which he received from the Plaintiff will result in an inequitable unjust enrichment of the Defendant.

Wherefore, Plaintiff Reeves Box requests this Court enter judgment in his favor according to proof based upon the value of the benefit conferred i.e. the value of the pole barn and the value of the framing services toward the completion of the home on Defendant's property, post-judgment interest pursuant to MCL 600.6013(8), and any other relief the Court deems just.

HOESCH & VANDER PLOEG, P.L.C.
Attorneys for Plaintiffs

Dated: September 26, 2014                    By: _____
                                              Scott Mancinelli (P60148)

19

## DEMAND FOR JURY TRIAL

Plaintiff, by her attorneys, hereby demands a trial by jury in the above-entitled action.

Respectfully submitted,

HOESCH & VANDER PLOEG, P.L.C.
Attorneys for Plaintiffs

Dated:  September 26, 2014          By: _____

Scott Mancinelli (P60148)